UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.  24cr10318 |
| | ) | |
| v. | ) | Violation: |
| | ) | |
| JASON GALLUS, | ) | Count One: |
| | ) | Conspiracy to Commit Securities Fraud |
| Defendant | ) | (18 U.S.C. § 1349) |
| | ) | |
| | ) | Forfeiture: |
| | ) | 18 U.S.C. § 981(a)(1)(C) and |
| | ) | 28 U.S.C. § 2461(c) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant JASON GALLUS was a resident, variously, of New York and Florida.

2. David Schottenstein was a resident of Florida. As set forth below, Schottenstein was a relative of Individual 1 and Individual 2 and had a relationship of trust and confidence with both of them.

3. Kris Bortnovsky, also known as "Kris Bort," was a resident, variously, of New York and Florida. Bortnovsky was the president and co-founder of Sakal Capital Management, LLC ("Sakal Capital Management"), a privately held asset management firm incorporated in Delaware, and managed the Sakal US Fund LLC ("Sakal US Fund"). At relevant times, Schottenstein and GALLUS were investors in the Sakal US Fund.

4. Co-conspirator 1 ("CC-1") was a resident, variously, of New York and Florida.

5. Co-conspirator 2 ("CC-2") was a resident, variously, of New York and Florida.

6. Individual 1 was a relative of Schottenstein who resided in Florida. At relevant times, Individual 1 was a member of the board of directors of DSW, Inc. ("DSW"), a publicly-

traded footwear and accessories retailer based in Columbus, Ohio.  Between in or about February 2018 and November 2018, Individual 1 was also a member of the board of directors of Green Growth Brands ("GGB"), a retailer of cannabis-related products also based in Columbus, Ohio.  As a member of the boards of directors of both DSW and GGB, Individual 1 owed a fiduciary duty and a duty of trust and confidence to those companies.  After November 2018, Individual 1 continued to owe duties of loyalty and confidentiality to GGB commensurate with those owed by the company's directors pursuant to a "Board Observer Agreement" that provided, in relevant part, that he would not use or disclose "any confidential or proprietary information" relating to GGB's "business and affairs."  Individual 1 was a close relative of Individual 2 and had a relationship of trust and confidence with Individual 2.

7. Individual 2 was a relative of Schottenstein and, as noted, a close relative of Individual 1.  At relevant times, Individual 2 was a member of the board of directors of DSW.  In that capacity, Individual 2 owed a fiduciary duty and a duty of trust and confidence to DSW.

8. Individual 3 was a close friend of CC-1 who resided in New York.  At relevant times, Individual 3 was a partner at a private equity firm in New York (the "Private Equity Firm").

9. Aphria, Inc. ("Aphria") was a producer and distributor of cannabis products based in Leamington, Ontario, Canada.  At relevant times, Aphria traded on the New York Stock Exchange ("NYSE") under the ticker symbol APHA and was an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 (the "Exchange Act").

10. At Home Group, Inc. ("At Home") was a retailer of home décor products based in Plano, Texas that, at relevant times, traded on the NYSE under the ticker symbol HOME and was

an issuer with a class of securities registered under Section 12 of the Exchange Act. At relevant times, the Private Equity Firm owned a stake in At Home.

11. At relevant times, the shares of DSW traded on the NYSE under the ticker symbol DSW. In or about March 2019, DSW changed its name to Designer Brands, Inc., and its shares thereafter traded on the NYSE under the ticker symbol DBI. At all relevant times, the company was an issuer with a class of securities registered under Section 12 of the Exchange Act.

### Overview of the Conspiracy

12. Beginning no later than in or about February 2018 and continuing through at least in or about June 2023, GALLUS conspired with Bortnovsky, Schottenstein, CC-1, CC-2, and others known and unknown to the U.S. Attorney to obtain material non-public information ("MNPI" or "inside information") about the financial performance and merger-and-acquisition activity of various publicly-traded companies and to trade in the securities of those companies while in possession of that MNPI.

### Object and Purpose of the Conspiracy

13. The object of the conspiracy was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about them. The principal purposes of the conspiracy were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

### Manner and Means of the Conspiracy

14. Among the manner and means by which GALLUS, Bortnovsky, Schottenstein, CC-1, and CC-2, together with others known and unknown to the U.S. Attorney carried out the conspiracy were the following:

      a.      Obtaining and sharing with each other MNPI about various companies, including but not limited to companies with which Individual 1, Individual 2, or Individual 3 were affiliated as major investors and board members, or about which they otherwise had confidential business information;

      b.      Trading in the securities of those companies while in possession of that MNPI, in violation of the fiduciary duties and duties of trust and confidence the conspirators owed to the sources of the information, or that the sources owed to the companies; and

      c.      Taking steps to conceal the scheme from regulators, law enforcement, and others, including by communicating about the MNPI in person or using coded language.

### Acts in Furtherance of the Conspiracy

15.    Beginning no later than in or about February 2018 and continuing through at least in or about June 2023, GALLUS, Bortnovsky, Schottenstein, CC-1, and CC-2, together with others known and unknown to the U.S. Attorney, committed and caused to be committed the following acts, among others, in furtherance of the conspiracy:

16.    On or about December 10, 2018, after Schottenstein obtained inside information about DSW's financial performance from Individual 1 and provided it to Bortnovsky, who provided it to GALLUS, GALLUS then messaged him: "We going to do anything with DSW[?]" Bortnovsky responded: "Calls 25 strike Jan."

17.    Later, on or about that same day, December 10, 2018, GALLUS messaged CC-2: "I think we have an earnings."  CC-2 responded: "What is it[?]"

18. Still later on or about that same day, December 10, 2018, while in possession of MNPI about DSW's financial performance that GALLUS had obtained from Bortnovsky, GALLUS and CC-2 purchased securities of DSW. For example, GALLUS purchased more than 100 DSW call option contracts.

19. On or about the following day, December 11, 2018, after DSW announced strong quarterly financial results for the third quarter of 2018, GALLUS messaged Bortnovsky: "Boom boom." Bortnovsky responded: "Yes!!"

20. Later, on or about that same day, December 11, 2018, GALLUS sold all of the DSW securities that he had purchased one day earlier.

21. As another example, on or about December 25, 2018, after Schottenstein obtained inside information from Individual 1 that GGB was planning to launch a hostile acquisition bid for Aphria and provided that MNPI to Bortnovsky, GALLUS obtained the MNPI regarding Aphria from Bortnovsky.

22. On or about the following day, December 26, 2018, GALLUS purchased Aphria securities. For example, on or about the morning of December 26, 2018, after meeting with Bortnovsky the previous night, and while in possession of the MNPI about Aphria that he had obtained from Bortnovsky, GALLUS purchased at least 14,000 Aphria shares.

23. Later, on or about that same day, December 26, 2018, GALLUS messaged CC-2: "Call me." Then, following a phone call between GALLUS and CC-2, CC-2 messaged GALLUS: "Should we be in options if there's going to be a sale."

24. Later, on or about that same day, December 26, 2018, CC-2 messaged GALLUS: "We gotta focus on tomorrow apha shouldn't we be crushing options on a sale?" GALLUS responded, in relevant part: "Yes but obviously Chris has been off."

25. On or about the following day, December 27, 2018, after GGB announced that it was launching a hostile bid to acquire Aphria, GALLUS messaged CC-2, in relevant part: "And the pot stock got sold." CC-2 responded, in relevant part: "So we missed it? It's up 24% afterhours. Awesome. Why didn't we take it? Easy money." GALLUS replied, in relevant part: "I told u I took it for a little yesterday. But nothing big." CC-2 responded, in relevant part: "Why didn't we play options on the weed stock like we agreed yesterday. You said you were going to inquire." GALLUS replied, in relevant part: "Bc Kris said do not do options on it." After CC-2 asked, "[w]hat was his logic?", GALLUS responded: "Trouble."

26. On or about the next day, December 28, 2018, GALLUS, at the instruction of Bortnovsky, sold all of the Aphria shares he had purchased two days earlier.

27. As a third example, on or about March 25, 2019, after CC-1 obtained inside information from Individual 3 that At Home was potentially going to be acquired, and after CC-1 shared that MNPI with Bortnovsky in breach of the duty of trust and confidence that CC-1 owed to Individual 3 as his close friend, Bortnovsky instructed GALLUS to purchase At Home call option contracts.

28. On or about that same day, March 25, 2019, while in possession of the MNPI regarding the potential sale of At Home, GALLUS purchased at least 100 At Home call option contracts.

29. Thereafter, in or about April 2019, while in possession of the MNPI from Bortnovsky regarding the potential sale of At Home, GALLUS purchased at least 15,000 At Home shares.

30. On or about May 21, 2019, after a would-be acquiror notified At Home that it was not able to secure financing for its planned acquisition of the company, Bortnovsky messaged

GALLUS: "Get out of HOME." On or about the same day, May 21, 2019, GALLUS sold all of his remaining shares in At Home.

<u>COUNT ONE</u>
Conspiracy to Commit Securities Fraud
(18 U.S.C. § 1349)

The U.S. Attorney charges:

31. The U.S. Attorney re-alleges and incorporates by reference paragraphs 1-30 of this Information.

32. From in or about February 2018 through at least in or about June 2023, in the District of Massachusetts and elsewhere, the defendant,

JASON GALLUS,

conspired with Kris Bortnovsky, David Schottenstein, CC-1, CC-2, and others known and unknown to the U.S. Attorney to commit securities fraud, that is, to knowingly execute and attempt to execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including but not limited to DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., and Aphria, Inc.; and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including but not limited to DSW, Inc., also known as Designer Brands, Inc., At Home Group, Inc., and Aphria, Inc., in that GALLUS, Bortnovsky, and others traded in the securities of those companies while in possession of material non-public information, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

33. Upon conviction of the offense charged in Count One, the defendant,

JASON GALLUS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

34. If any of the property described in Paragraph 33, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 33 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

JOSHUA S. LEVY
ACTING UNITED STATES ATTORNEY

By:   /s/ Ian J. Stearns
SETH B. KOSTO
KAITLIN R. O'DONNELL
IAN J. STEARNS
Assistant United States Attorneys
